Van Brunt, Respondent, vs. Ferguson and another, imp., Appellants.

*May 23—June 13, 1916.*

*Reformation of instruments: Mutual mistake: Deed creating charitable trust: Delay: Parties.*

1. A deed establishing a charitable trust, which by mutual mistake does not express the real meaning of the parties, may be reformed in a proper case if the necessary parties are before the court.
2. Even the lapse of years should not preclude the correction of such a mistake, where the delay is satisfactorily explained and no rights of third persons have intervened.
3. Thus, where the owner of land conveyed it to the trustees of the Wisconsin Consistory (a Masonic body) for the purpose of laying a foundation for a Masonic home for all needy Master Ma-

sons and their families, and that was the understanding of the Consistory and its officers, but by mistake the deed, which was drawn by one of said trustees and executed and recorded without careful examination then or for eight years thereafter by either party, contained conditions inconsistent with their intention and understanding, such mistake is corrected, in a suit by the grantor, by reforming the deed so as to make it express the original understanding—the delay being sufficiently explained, no rights of third persons having intervened, and the necessary parties (including the original grantees, the corporation at present holding the title, the present trustees of the Consistory, a sufficient representation, under sec. 2604, Stats., of the 2,700 members of the Consistory, and all the present beneficiaries of the charity) being before the court.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

This is an equitable action to reform a trust deed of real estate made by the plaintiff to the trustees of the Wisconsin Consistory (a Masonic body) in November, 1905, for charitable purposes, on the ground of mutual mistake. From a judgment reforming the deed as prayed two of the present beneficiaries of the trust appeal.

There is little dispute as to the essential facts. The plaintiff is and was at the time of the execution of the deed a Master Mason. He owned a farm of 319 acres with buildings near Dousman in Waukesha county worth about $45,000. He conceived the purpose of deeding this farm in perpetual trust to some Masonic organization for the purpose of furnishing a home for indigent Masons and their families. *Mr. Van Brunt* was at that time a member of the Wisconsin Consistory, which is a body of Masons who have passed thirty-two degrees of inspection. At the time of the execution of the deed there were over 21,000 Master Masons in Wisconsin and only 1,400 members of the Consistory. The plaintiff's idea was that this proposed charitable trust might well be administered by the Consistory, and after some written communications (in which the purpose to make a home for all aged

and indigent Master Masons in good standing is very clearly expressed) he executed a deed of the farm November 23, 1905, to Thomas E. Balding, Luther L. Caufy, and Thomas J. Pereles as trustees of the Wisconsin Consistory and their successors as such trustees, subject to certain conditions or trusts.   The first condition authorized the grantees to convey the premises to a corporation to be thereafter formed, composed of Consistory members, for the purpose of carrying out the purposes of the trust, until which time the trustees should perform the duties of the trust.   The second and third conditions of the deed were as follows:

"Second. That said premises are conveyed by said party of the first part, and accepted by said party of the second part, upon condition that the same shall be held, used and occupied for the purpose of Masonic charity in such form and subject to such rules and regulations as said trustees, their successors and assigns, or said corporation hereinbefore mentioned, shall from time to time make.

"This condition shall not prevent the said party of the second part, its successors or assigns, to receive or accept gifts, contributions, or nominal compensations in special cases, whether the same comes from members of the Consistory or other Masonic bodies.   Nor shall it prevent any members of the Consistory to provide for themselves a home on any portion of said premises; nor prevent them from receiving, upon proper compensation, the benefits of a temporary home in said premises, and for which they can pay such charges as the said party of the second part shall from time to time determine. All of which gifts, contributions of moneys, and compensations, when paid, shall be credited to the maintenance fund and be used towards the general maintenance and support of the home that said party of the second part will establish on said premises.

"Third. The said trustees, successors or assigns, or the corporation which shall succeed them in the premises as hereinbefore provided, or the party of the second part, shall be and hereby are authorized to enact, from time to time, such rules and regulations to properly carry into effect the objects of this conveyance as they or it shall deem proper and advisable.   It

being my desire and intention, and these premises are conveyed by me, giving and granting to said party of the second part, their successors and assigns, and the parties herein named, the fullest and broadest authority to establish upon said premises an opportunity to dispense Masonic charity without restriction except subject to the conditions herein contained."

These conditions were followed by a clause providing for a reversion of the title to the grantor or his heirs in case it should cease to be used for the trust purposes.

It appears that this deed was prepared by Mr. Thomas J. Pereles (now deceased) and that apparently no other trustee took any part in its preparation. *Mr. Van Brunt* gave the scrivener no special instructions. When the deed was presented to him for signature he gave it no careful consideration, but supposed it carried out his intentions to establish a home for all unfortunate Master Masons and their families, signed it, and gave it back to Mr. Pereles. Mr. Pereles at once recorded it, and it was never presented to the Consistory or to any official thereof in his official capacity. No attention was thereafter given to the deed by any one.

It will be seen by examination of the conditions of the deed that certain special privileges are reserved to Consistory members under the second condition which are not shared by Master Masons in general, also that all gifts and contributions must be used for the support of the home and cannot apparently be used for endowment or permanent improvements. It was proven and the court found that the insertion of these provisions in the deed and some minor provisions not deemed necessary to insert at length here was the unauthorized act of Mr. Pereles and that neither *Mr. Van Brunt* nor the majority of the trustees understood that any such provisions were contemplated or contained in the deed. The purpose of the grantor was simply to lay the foundation for a Masonic home for all needy Master Masons and their families without distinction, and this was the understanding of the Consistory and

its officers. A corporation called the "Wisconsin Consistory Home Association" (one of the defendants) was immediately formed by some of the members of the Consistory, and in April, 1906, the trustees of the Consistory deeded the property to the corporation subject to the conditions and trusts created by the deed made to them, and *Mr. Van Brunt* joined in and ratified the conveyance. This corporation immediately assumed administration of the trust, opened a home on the farm, and has continued to administer the same, there being now ten persons (all of whom are parties defendant in this action) receiving the benefits of the charity at this home. This corporation adopted rules for the government of the home and the admission of beneficiaries, but these rules extended the benefits of the home to Master Masons and their families generally and gave no special privileges to members of the Consistory. The members of the Consistory generally did not understand that they were entitled to any special rights in the charity over and above the rights of Master Masons generally.

Early in 1913 *Mr. Van Brunt,* desiring the home to do a larger work, made a written offer to contribute about $200,000 for the endowment of the charity provided the Grand Lodge of Master Masons of Wisconsin would take it over and thereafter support it. The Grand Lodge indicated its willingness to accept the charge, but on examination of the deed of trust it was discovered, apparently for the first time, that it contained the provisions already noted granting special rights to Consistory members and practically prohibiting the accumulation of an endowment fund as well as other lesser clauses, which were not consistent with the intention or understanding of *Mr. Van Brunt* nor with the understanding of the officers and members of the Consistory.

Thereupon this action was brought to reform the deed in the respects in which it did not agree with the understanding of the parties. In this action there were joined as defendants the corporation aforesaid, the trustees of the Consistory, six individual members of the Consistory, representing them-

selves and all other members of that body (now numbering over 2,700), as well as all the present occupants of the home and beneficiaries of the charity.

The defendants appeared and answered, and after hearing the testimony the court made findings substantially in accordance with the facts as hereinbefore stated and decreed reformation of the deed on the ground of mutual mistake as to its provisions.

The material changes thus made were in brief (1) the elimination from paragraph numbered "second" in the deed of that sentence giving members of the Consistory a right to build homes on the premises or to be received into the home regardless of their need for charity; (2) the addition to said "second" paragraph of words allowing gifts and contributions to be used to establish an endowment or for improvements; (3) the omission from the paragraph numbered "third" in the deed of the final words, viz. "an opportunity to dispense Masonic charity without restriction except subject to the conditions herein named," and the insertion instead of the words "a Masonic home for the benefit of indigent Masons of Wisconsin or the wives, minor children, widows, or orphans of Wisconsin Masons;" (4) the addition to said paragraph "third" of a clause allowing transfer of the title to such other Masonic body as should be deemed best able to manage the trust and insure its adequate support and perpetuity. The remaining changes were merely slight verbal changes in expression not affecting the essential meaning of the deed but tending to give greater clearness to the provisions.

For the appellants there was a brief signed by *Nohl & Nohl,* and oral argument by *Leo F. Nohl.*

For the respondent there was a brief by *George E. Morton* and *Charles B. Perry,* attorneys, and *Willel M. Spooner,* of counsel, and oral argument by *Mr. Morton.*

. WINSLOW, C. J.   The jurisdiction of a court of equity, when seasonably invoked, to reform written instruments

which by mutual mistake do not express the real meaning of the parties, is very ancient and well recognized. A deed establishing a charitable trust may doubtless be thus reformed in a proper case providing the necessary parties are before the court. The necessary parties are all present in this action, namely, the original grantees in the deed, the corporation at present holding the title, the present trustees of the Consistory, a sufficient representation of the 2,700 members of the Consistory to satisfy that provision of the Code allowing one or more to defend for the benefit of all (sec. 2604, Stats. 1915), and all of the present beneficiaries of the charity.

It is probably very rarely the case that a court would be justified in decreeing reformation of a deed after the lapse of eight years. In most cases probably so long a delay would be rightly regarded as inexcusable laches or rights of third persons would have intervened which would make any change in the title inequitable. Where, however, no rights have been acquired by third persons and the lapse of time is satisfactorily explained, there is no logical reason why mutual mistakes of this nature should not be corrected even after years have passed by.

In the present case the lapse of time is very satisfactorily accounted for. The deed, after its execution and recording, was never submitted to the officers of the Consistory and at once went into the personal possession of the scrivener, Mr. Pereles, and there remained; neither the grantor nor any members of the Consistory thereafter examined it or the record; and there does not seem to have been any event naturally calling for or suggesting such an examination until the proposition of *Mr. Van Brunt* to endow the institution in 1913. At this time the matter was looked up and then it was learned that provisions appeared in the deed greatly hampering the scheme of the charity. Had these been conditions knowingly imposed by the parties when the trust was created, there would of course be no room for reformation of the deed.

Courts will not make agreements for parties. But the proof is very satisfactory that both *Mr. Van Brunt* and the officers of the Consistory generally understood that the intention was to create a home for indigent Master Masons and their families on a broad scale and not to grant special privileges to any particular class or body. It was natural that they should allow Mr. Pereles, who was a Mason, a lawyer, and a business man of experience, to draw the conveyance, and it was equally natural that both grantor and grantees should not scrutinize it closely but accept it without careful examination. The proof is ample that this was the case. All had confidence in him, and it is a well known fact that laymen frequently sign documents which trusted legal friends have drawn without full examination and with the idea that legal phraseology is difficult of understanding in any event and is hardly worth the effort. It will probably always remain a mystery how Mr. Pereles came to draw the deed as he did. But whether it was the result of innocent misapprehension of *Mr. Van Brunt's* intentions or was a deliberate misstatement of those intentions it is abundantly proven that the deed did not contain the provisions necessary to carry out the offer of *Mr. Van Brunt* or the understanding of the Consistory. The changes in the deed made by the judgment seem to be simply the changes necessary to make the deed speak in complete terms the understanding of the parties at the time, and, as the delay is sufficiently explained and no rights of third persons have intervened, the judgment must be affirmed.

*By the Court.*—Judgment affirmed without costs.